IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SCOTT SANDERS, | ) | C/A No. 2:21-cv-00035-DCC-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | **REPORT AND RECOMMENDATION** |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Scott Sanders ("Plaintiff"), brought this action pursuant to Section 205(g) of the

Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final

decision of the Commissioner of Social Security Administration regarding his claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security

Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code,

Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends reversing the

decision of the Commissioner and remanding for further consideration.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on August 23, 2018, alleging a disability onset

date of April 25, 2018. (R. at 15.) Plaintiff claimed disability due to, *inter alia*, his broken ankles,

broken left wrist and broken right fingers and toes, broken knee, and impaired rotator cuffs. (R. at

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, she is automatically substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

221.) Plaintiff has a high school education and past relevant work as an auto mechanic, crane operator, surveyor's helper, and tree cutter. (R. at 30.) His application was denied initially and on reconsideration. (R. at 15.) After a hearing before an Administrative Law Judge ("ALJ") on January 30, 2020, the ALJ issued a decision on February 20, 2020, in which the ALJ found that Plaintiff was not disabled. (R. at 15–32.) The Appeals Council denied Plaintiff's request for review, (R. at 1–5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

(2)     The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)     The claimant has the following severe impairments: status post left tibial plateau fracture with ORIF[2] and residual osteoarthritis, degenerative disc disease of the lumbar spine, status post left ankle fracture with ORIF and left ankle stiffness, and obesity (20 CFR 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could lift or carry 10 pounds occasionally and 5 pounds frequently. He could stand or walk for 2 hours out of 8 hours and sit 6 hours out of 8 hours. He could never kneel, crawl, or climb ladders, ropes, or scaffolds. He could occasionally climb ramps/stairs, balance, stoop, and crouch. He should avoid concentrated

---

[2] While the ALJ does not define "ORIF" in his decision, WebMD states that "ORIF stands for open reduction and internal fixation. It's a type of surgery that is used to repair broken bones that need to be put back together. During the surgery, some form of hardware is used to hold the bone together so it can heal." *What is ORIF Surgery*, WebMD.com, https://www.webmd.com/a-to-z-guides/what-is-orif-surgery (last updated May 20, 2021).

exposure to vibration and workplace hazards such as unprotected heights and moving machinery.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on May 5, 1971 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from April 25, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 15–32.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

---

[3] "[T]he definition of disability is the same under both DIB and SSI. . . ." *Morgan v. Saul*, 9:19-CV-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at

869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the ALJ improperly discounted the opinion of Plaintiff's treating physician, Nathanael Benetiz, D.O.[4] (Dkt. No. 13 at 17–19.) Plaintiff also asserts that the Appeals Council erred in failing to consider new evidence submitted by Plaintiff in support of his appeal. (*Id.* at 19–22.)

The undersigned considers these arguments below.

### A.    The ALJ's Decision

The ALJ's decision considers whether Plaintiff was disabled from April 25, 2018, the alleged onset date, through the date of the ALJ's decision, February 20, 2020. The ALJ considered Plaintiff's allegations of disability and found that he had the following severe impairments: "status post left tibial plateau fracture with ORIF and residual osteoarthritis, degenerative disc disease of the lumbar spine, status post left ankle fracture with ORIF and left ankle stiffness, and obesity." (R. at 17.) The ALJ found that "[t]he severity of Plaintiff's physical impairments considered singly and in combination does not meet or medically equal the criteria of any listed impairment, including those in section 1.0 Musculoskeletal System." (R. at 18.) In support of this finding, the ALJ detailed the medical evidence in the record pertaining to: Plaintiff's "history of left tibial plateau fracture, degenerative disc disease of the lumbar spine, and history of fracture of the left ankle"; Plaintiff's left knee injuries; and Plaintiff's reported daily activities. (R. at 18–21.)

The ALJ then found Plaintiff had the RFC to perform sedentary work with additional limitations. (R. at 21.) In assessing Plaintiff's RFC, the ALJ thoroughly considered Plaintiff's

---

[4] D.O. is an abbreviation for Doctor of Osteopathy, an osteopathic physician. *See Medical Definition of D.O.*, MedicineNet.com, https://www.medicinenet.com/do/definition.htm (last updated March 29, 2021).

hearing testimony, treatment records, diagnostic findings, and the medical opinion evidence. (R. at 21–30.)

Most relevant here, the ALJ considered Dr. Benitez's opinion evidence as follows:

Dr. Benitez has provided a medical opinion that is both persuasive and unpersuasive (7F). For example, Dr. Benitez has indicated that the claimant could walk 2 city blocks without rest or severe pain. He could sit at least 6 hours in an 8-hour workday and stand/walk about 2 hours cumulative in an 8-hour workday. Dr. Benitez has indicated that the claimant does not need to elevate his leg. These determinations are persuasive, because they are supported by and consistent with the record as a whole. On the other hand, Dr. Benitez has indicated that the claimant would need to shift positions at will and take unscheduled breaks during the workday. Dr. Benitez has indicated that pain would occasionally interfere with the claimant's attention and concentration. These determinations are not persuasive, because they are not supported by or consistent with the record as a whole.

(R. at 27–28.)

The ALJ then provided a lengthy "summary" that he found "supports the persuasiveness of the various opinions and the claimant's subjective allegations, as well as the appropriateness of the residual functional capacity." (R. at 28.) The ALJ concluded that "the record as a whole does not indicate the need for additional restrictions in the residual functional capacity, including those related to exertional demands, postural activities, . . . or mental demands, such as breaks throughout the workday, absences from work, concentration, persistence, pace, or socialization, for example." (R. at 30.) After considering Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff can perform work that exists in significant numbers in the national economy. (R. at 30–31.) The ALJ therefore concluded that Plaintiff is not disabled. (R. at 31–32.)

## B.     Consideration of Opinion Evidence

Plaintiff first argues the ALJ erred in failing to evaluate the medical opinion of his treating physician, Dr. Benitez. (Dkt. No. 13 at 17–19.) For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations

governing the evaluation of opinion evidence.[5] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources"). Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. 20 C.F.R. § 404.1520c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). This includes statements on issues reserved to the Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. § 404.1520b(c)(3).

As discussed above, the ALJ found Dr. Benitez's opinion was both persuasive and unpersuasive. He found the following portions of the opinion unpersuasive—that Plaintiff "would need to shift positions at will and take unscheduled breaks during the workday" and that "pain would occasionally interfere with the claimant's attention and concentration." (R. at 28.) The ALJ

---

[5] 20 C.F.R. § 404.1520c has replaced the "Treating Physician Rule" for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920c; *see also Marshall v. Berryhill*, Case No. 16-cv-00666-BAS-PCL, 2017 WL 2060658, at *3 n.4 (S.D. Cal. May 12, 2017). Under the Treating Physician Rule, a treating physician "opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." *Arakas*, 983 F.3d at 107 (emphasis in original).

found "these determinations are not persuasive, because they are not supported by or consistent with the record as a whole." (R. at 28.) He then detailed those portions of the record he found supported his assessment of the opinion evidence as well as the appropriateness of the residual functional capacity. (R. at 28–30.)

Plaintiff briefly argues the ALJ's assessment of Dr. Benitez's opinion "does not provide the explanation required by the new regulations." (Dkt. No. 13 at 18.) He asserts 20 C.F.R. § 404.1520c requires ALJs to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in their decision, and the ALJ failed to do so here. (*Id*. (quoting § 404.1520c)). The Commissioner responds that the ALJ "complied with the regulations and substantial evidence supports his conclusion that some of Dr. Benitez's opinions were unpersuasive and unsupported by the record." (Dkt. No. 14 at 11.)

Here, a review of the ALJ's decision as a whole reveals that the ALJ thoroughly detailed and considered Plaintiff's medical records and reasonably found that the medical records did not support some of the limitations opined by Dr. Benitez. (R. at 21–30.) For example, the ALJ noted, *inter alia*,

- "Apart from ORIF of the left tibial plateau fracture, all treatment for orthopedic and musculoskeletal complaints has been conservative since the alleged onset date";

- "Across all sources, the claimant has normal mental status findings with no references to abnormal concentration, attention, focus, memory, or socialization";

- By August 8, 2018, Plaintiff's "main complaint now concerned soreness around the left ankle when he walked";

- "At the consultative examination in October 2018," Plaintiff " had normal sensation in the right lower extremity, but not in the left lower extremity," "normal ranges of motion in the cervical spine, lumbar spine, shoulders, elbows, wrists, hands, knees, hips, and ankles,"

"He had good strength in the right ankle and only mildly reduced strength in the left ankle at 4/5. He had 5/5 strength in the upper extremities, 4/5 strength proximally in the left lower extremity, 5/5 strength distally in the left lower extremity, and 5/5 strength in the right lower extremity," "Problems with the left lower extremity caused difficulty with squatting, tandem walking, and heel walking," however, Plaintiff's "gait was normal";

- "MRI of the lumbar spine on October 22, 2018, was marginally abnormal with . . . grade 1 anterolisthesis of L5 upon S1 with bilateral neural foraminal stenosis";

- "During an orthopedic visit on October 25, 2018, inspection of the lumbar spine revealed muscle spasms and stiffness, tenderness of the paraspinal muscles, decreased range of motion, and reproducible pain with flexion and tension." "He had diminished light touch in the left L5 and S1 dermatomes. However, he maintained 5/5 strength in the upper and lower extremities." "This visit represents about the only instance of such abnormal findings concerning the lower back since the alleged onset date, other than decreased sensation in the left lower extremity at the consultative exam"; and

- "Dr. Benitez's records from March 2019 to January 2020 show that the claimant is alert and oriented with normal mood, affect, behavior, judgment, and thought content" and "his musculoskeletal findings are consistently within normal limits, including in terms of range of motion."

(R. at 28–29.)

The ALJ's analysis here appropriately explains how he considered the factors of supportability and consistency. Given Plaintiff's conservative treatment and the relatively normal musculoskeletal findings, in addition to the other evidence the ALJ highlighted above, the undersigned finds that substantial evidence exists to support the ALJ's consideration of Dr. Benitez's opinion. *See*, *e.g.*, *Vidro-Ojeda v. Kijakazi*, No. 1:20-CV-238, 2021 WL 4034231, at *13

(M.D.N.C. Sept. 3, 2021) (finding substantial evidence supports ALJ's finding that the limitations on the medical source statements lacked consistency with the record where the ALJ discussed evidence "regarding Plaintiff's back, knee, and foot impairments and their impact on his functional abilities"); *Raines v Kijakazi*., No. 3:21-CV-00045, 2021 WL 4258733, at *16 (S.D.W. Va. Aug. 27, 2021), *adopted by*, 2021 WL 4255625 (S.D.W. Va. Sept. 17, 2021) (ALJ's evaluation of opinion evidence is supported by substantial evidence where ALJ "determined the opinion was not supported by a review of the record or consistent with [treating physician's] own clinical findings on exam"); *Bentley v. Kijakazi*, No. 2:20-CV-00026, 2021 WL 3754653, at *11 (W.D. Va. Aug. 25, 2021) (substantial evidence supports ALJ's finding that portions of treating physician's opinion were not persuasive where the record showed, *inter alia*, the claimant "was doing well with only conservative treatment" and "cardiac examinations yielded normal findings").

Accordingly, remand is not warranted on this basis.

### C.     Appeals Council's Failure to Consider Plaintiff's Additional Evidence

Plaintiff next contends that the Appeals Council erred in failing to consider additional evidence submitted in support of his appeal. (Dkt. No. 13 at 19–22.)

#### 1.     Relevant Standards and Regulations

The Social Security regulations require only that the Appeals Council consider the new and material evidence in deciding whether to grant review, and, if it chooses not to grant review, there is no express requirement that the Appeals Council explain its rationale for denying review. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011). When the Appeals Council receives additional evidence and denies review, the issue for the court is whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard. *Id.* at 704 (citation omitted). "In making this determination, we 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into

the administrative record.'" *Id.* (quoting *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). As the Fourth Circuit stated in *Meyer*, when the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, when the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record," as "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

Effective January 1, 2017, the regulation governing the Appeals Council's consideration of new evidence was amended as follows:

(a) The Appeals Council will review a case if—

...

(5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

(b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:

(1) Our action misled you;
(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
(ii) There was a death or serious illness in your immediate family;
(iii) Important records were destroyed or damaged by fire or other accidental cause;
(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or

(v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. §§ 404.970, 416.1470 (2017).[6] Thus, the new regulation added two requirements to a claimant's burden when presenting new evidence for the first time at the Appeals Council level: (1) the claimant must demonstrate good cause for the failure to submit the evidence in question at least five days prior to the ALJ's decision pursuant to 20 C.F.R. §§ 404.953 and 416.1453; and (2) the claimant must show a reasonable probability of a different outcome.[7]

## 2.     Background

Plaintiff requested review with the Appeals Council on April 15, 2020, and he submitted a letter in support of his appeal on July 14, 2020. (R. at 189, 279–83.) On October 9, 2020, Plaintiff submitted a letter to the Appeals Council enclosing an "EMG/nerve conduction study dated 9/4/20 regarding Mr. Sanders." (Dkt. No. 13-1 at 3.) The study was completed by Dr. Alfred Moss, and provided his "impression" based on Plaintiff's "electrophysiological findings." In his letter to the Appeals Council, Plaintiff stated,

> There are the good cause considerations for admitting this evidence at the Appeals Council level; first, we did not represent Mr. Sanders before the agency and cannot guess at what barriers were previously in place to Mr. Sanders' ability to obtain this testing. Second, the ALJ noted Mr. Sanders' complaints of sharp pain in his left leg and back, as well as numbness in his left leg and toes, which caused him trouble with ambulation and falling. The ALJ found Mr. Sanders' complaints were not entirely consistent with the evidence of record and he rejected the treating opinion by finding the opinions of limitations related to Mr. Sanders' pain were not supported by the record. The new diagnostic test relates specifically to Mr. Sanders'

---

[6] Here, Plaintiff filed his applications for DIB and SSI on August 23, 2018, and the Appeals Council denied Plaintiff's request for review on November 12, 2020, after the new regulation took effect. (R. at 1–4.) Thus, the new version of the regulation applies to Plaintiff's claims. *See, e.g.*, *Collins v. Berryhill*, No. 3:17-CV-633 (MHL), 2018 WL 4232888, at *12 (E.D. Va. Aug. 20, 2018), *adopted*, 2018 WL 4224854 (E.D. Va. Sept. 5, 2018) (applying new regulation where Appeals Council denied claimant's request for review after the new regulation went into effect).

[7] The Fourth Circuit has historically defined "material" as a reasonable possibility that the new evidence would have changed the outcome of the case. *See Meyer*, 662 F.3d at 704; *Wilkins*, 953 F.2d at 96. Thus, the new versions of §§ 404.970 and 416.1470 heighten the claimant's burden from showing a "reasonable possibility" to a "reasonable probability." *See Hawks v. Berryhill*, No. 1:17-CV-1021, 2018 WL 6728037, at *4 n.5 (M.D.N.C. Dec. 21, 2018) (noting that showing a reasonable probability of a different outcome is now an additional requirement to showing materiality).

complaints during the relevant period and shows objective evidence of moderate sensory and motor polyneuropathy and suggestions of a subacute left L5, S 1 radiculopathy. Therefore, this evidence is new and material and there are good cause considerations for not submitting it previously.

(*Id.*) On November 12, 2020, the Appeals Council issued its denial of Plaintiff's appeal. It did not mention or exhibit Plaintiff's October 9, 2020 letter. (R. at 1–5.)

### 2.     Analysis

### a.     Directives and Materiality

Here, Plaintiff first argues the Appeals Council erred by failing to "follow the directives of 20 C.F.R. § 404.970." (Dkt. No. 13 at 21.) The undersigned assumes this to refer to the Appeals Council's failure to mention the EMG/nerve conduction study in its denial notice or include the reason that it was not considering it. The Commissioner does not respond to this argument.

The amended regulation states,

> If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section, or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application.

20 C.F.R. § 404.907(c); *see also* § 416.1470(c). Here, it is undisputed the Appeals Council did not follow the requirements of the amended regulation. However, the Court need not decide whether remand is warranted on this procedural error alone, because, for the reasons discussed below, the undersigned recommends the Appeals Council should have considered this additional evidence.

Plaintiff asserts that the EMG/nerve conduction study is material because it could impact the ALJ's consideration of Dr. Benitez's opinion and Plaintiff's subjective allegations. (Dkt. No. 13 at 21.) Plaintiff maintains that "the ALJ rejected Dr. Benitez's opinions of limitations related to pain [that] were not supported by the record" and the "new, positive diagnostic findings . . . provide[] the objective evidence that supports Sanders' reported complaints." (*Id.*) As discussed

above, the ALJ found the following portions of Dr. Benitez's opinion unpersuasive—that Plaintiff "would need to shift positions at will and take unscheduled breaks during the workday" and that "pain would occasionally interfere with the claimant's attention and concentration." (R. at 28.) The ALJ also considered Plaintiff's allegations that, *inter alia*, "[h]e has constant pain in the lower back," "has ankle pain daily," and [p]ain disrupts his sleep and causes problems with concentration and focus." (R. at 22.) The ALJ found Plaintiff's alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (R. at 22.)

The Commissioner responds that the additional evidence "is simply cumulative" and that the ALJ "understood that Plaintiff had a back condition." (Dkt. No. 14 at 12.) The Commissioner further argues that because Dr. Moss did not elaborate on how Plaintiff's condition affected functioning, the study is not probative and merits no consideration. (*Id*. at 11.)

Upon careful review, the undersigned finds that the evidence submitted by Plaintiff is new, material, related to the relevant period, and there is a reasonable probability that it would have changed the outcome. *See Ledbetter v. Astrue*, 8:10-cv-00195-JDA, 2011 WL 1335840, at *13, n.7 (D.S.C. Apr. 7, 2011) ("'Whether the evidence is new, material and related to the relevant period is a question of law reviewed *de novo*.'" (quoting *Box v. Shalala*, 52 F.3d 168, 171–72 (8th Cir. 1995))). In the study at issue, Dr. Moss wrote under "Patient Complaints":

> [Plaintiff] complaints of constant left distal lower extremity pain and paresthesias [sic] more prominent on the plantar and dorsal surfaces of the left foot. Patient reports severe burning in his left feet. Patient reports a previous left leg surgery and right ankle surgery. Patient reports significant lumbar spinal pain in the left lower extremity. Patient reports difficulty walking, sleeping, and standing due to his chief complaint, and loss of balance due to his chief complaint. Patient reports left leg weakness.

(Dkt. No. 13-1 at 5.) Dr. Moss found that Plaintiff "exhibits electrophysiological findings consistent with the following": "Moderate sensory and motor polyneuropathy that is axonal in

mature, of the nerves of the left foot. Spontaneous potentials noted which may be suggestive of subacute left L5, S1 radiculopathy. Sympathetic skin response is present." (Dkt. No. 13-1 at 5.)

As discussed above, the ALJ indeed considered evidence of Plaintiff's reduced sensation and strength in his left lower extremity and the "diminished light touch" in Plaintiff's lumbar spine at left L5, S1 when assessing Dr. Benitez's opinion and Plaintiff's subjective allegations. *See supra* section B (*see also* R. at 27–30.) However, the records with "abnormal findings" highlighted by the ALJ were dated in October 2018, and the ALJ emphasized that the October 2018 orthopedic visit was "the only instance of such abnormal findings concerning the lower back since the alleged onset date, other than the decreased sensation in the left lower extremity at the consultative exam" in October 2018. (R. at 29.) The ALJ summarized this evidence as support for "the persuasiveness of the various opinions and the claimant's subjective allegations, as well as the appropriateness of the residual functional capacity." (R. at 28.) Accordingly, it appears that the frequency of documented abnormal findings concerning Plaintiff's lower back and lower extremity directly impacted the ALJ's consideration of Plaintiff's residual functional capacity.

Further, the "Patient Complaints" summarized by Dr. Moss directly mimic those same symptoms alleged by Plaintiff during the ALJ hearing. (R. at 22.) Accordingly, the findings noted by Dr. Moss appear to have bearing on whether Plaintiff was disabled during the relevant period of time. *Reichard v. Barnhart*, 285 F.Supp.2d 728, 733 (S.D.W. Va. 2003) (explaining that the requirement that new evidence must relate to the period on or before the date of the ALJ's decision "does not mean that the evidence had to have existed during that period," but instead means only that "evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time").

Additionally, the vocational expert's testimony at the ALJ hearing indicated that if the ALJ had incorporated the entirety of Dr. Benitez's opinion into Plaintiff's RFC, there would be no jobs

available to him. More specifically, the vocational expert testified that if an individual needed to take unscheduled breaks one to two times a day outside of the normal break scheduled for ten to fifteen minutes, this would "completely eliminate any jobs [the vocational expert] would suggest." (R. at 71–72) (*see also* R. at 568, Dr. Benitez opines Plaintiff would need to take unscheduled breaks one to two times per day outside of normal break time for ten to fifteen minutes.)

While the Commissioner correctly asserts that "medical conditions alone do not entitle a claimant to disability benefits; '[t]here must be a showing of related functional loss,'" the ALJ's discussion of the evidence indicates that the findings in the September 2020 study would have directly impacted his consideration of the functional limitations opined by Dr. Benitez and alleged by Plaintiff. (Dkt. No. 14 at 11 (quoting *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011)). Based on the foregoing, the undersigned recommends that the evidence at issue is new, material, related to the relevant period, and there is a reasonable probability that it would have changed the outcome of the ALJ's decision.

### b.    Good Cause

Plaintiff contends that good cause exists for the submission of this additional evidence because "[t]he undersigned did not represent Sanders before the agency and cannot guess at what barriers Sanders had to obtaining this diagnostic testing previously." (*Id.*) The Commissioner does not acknowledge Plaintiff's good cause argument.

In *Cannady v. Berryhill*, the court found that where "Plaintiff's current counsel did not represent her until after the ALJ's decision," this "could allow her to meet [a] circumstance under the good cause exception." No. 1:18-CV-00887-BHH-SVH, 2019 WL 1473318, at *19 (D.S.C. Mar. 13, 2019), *adopted sub nom. Clara Cannady, Plaintiff, v. Nancy A. Berryhill, Acting Comm'r of Soc. Sec., Defendant.*, 2019 WL 1470134 (D.S.C. Apr. 3, 2019); *see* 81 Fed. Reg. at 90990–91 ("[I]f a new representative can show that a prior representative did not adequately uphold his or

17

her duty to the claimant, we expect that our adjudicators would find that this would warrant an exception to the 5-day requirement."). In support, the court cited evidence from the record that the current counsel was unable to explain why particular evidence was not submitted to the ALJ because this counsel began representing claimant after the ALJ's decision. *Id.* The court furter emphasized that the Appeals Council "did not find [claimant] failed to show good cause for failing to produce [the evidence] earlier." *Id.*

As in *Cannady*, the record here shows that current counsel did not represent Plaintiff in the underlying ALJ proceedings and the Appeals Council was silent on the issue of good cause. Also, the Commissioner does not dispute Plaintiff's assertion that he has demonstrated good cause. The undersigned recommends that, under such circumstances, Plaintiff has demonstrated good cause for failing to produce this evidence earlier.

### 3.    Conclusion

Based on the foregoing, the Appeals Council should have considered the September 2020 study at issue. Because it was an error of law to not consider and exhibit such evidence, the undersigned finds it proper to treat the study as if it had been made a part of the record and consider it on review. *See Coleman v. Berryhill*, No. 6:17-cv-02613-TMC, 2019 WL 850902, at *5 (D.S.C. Feb. 22, 2019)  (noting that the Appeals Council did not make the additional evidence part of the record, but finding sentence four remand appropriate regardless "because it was an error of law to not consider and exhibit such evidence"); *Wise v. Colvin*, No. 6:13-cv-2712-RMG, 2014 WL 7369514, at *7 (D.S.C. Dec. 29, 2014) (finding it "completely proper" to consider the additional evidence on remand under sentence four when the Appeals Council erred in not making it part of the record). However, because no factfinder has considered or weighed this study in light of the other evidence in the record, the undersigned cannot determine if substantial evidence supports the decision of the Commissioner. Therefore, the undersigned recommends that reversal of the

18

Commissioner's decision and remand under sentence four is appropriate. *See, e.g., Hale v. Barnhart*, No. 7:05-CV-00333, 2005 WL 3177315, at *3 (W.D. Va. Nov. 29, 2005) (finding remand appropriate under sentence four for consideration of, *inter alia*, MRI results because "such objective findings could be interpreted as a cause for plaintiff's complaints of severe and unrelenting back pain"; noting "the Appeals Council should have given some reason for adopting the Law Judge's opinion, despite the objective findings set forth in the new medical exhibits").

Alternatively, a sentence six remand would also be appropriate. 42 U.S.C. § 405(g) (stating that the court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding"). The evidence at issue was not in existence at the time the ALJ decided Plaintiff's case, and it appears that counsel timely submitted it to the Appeals Council for review. These facts, coupled with the Appeals Council's error in not considering or exhibiting the study constitutes "good cause" for why the opinion is not in the record at this time. *See Wise*, 2014 WL 7369514, at *7 (determining that the Appeals Council's error in not making a document a part of the record was good cause for the absence of the document in the record). Additionally, as discussed above, this evidence is both new and material.

## <u>CONCLUSION</u>

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.

September 23, 2021
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).